UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| RYAN O. FLY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:04-CV-191 RM |
| | ) | |
| SPX WEIL McLAIN, | ) | |
| | ) | |
| Defendant | ) | |

OPINION and ORDER

Weil McLain moves for summary judgment on Ryan Fly's claims against the company. Mr. Fly alleges that during his tenure at Weil McLain, he was subjected to discrimination and harassment based on his race and suffered retaliation for having filed charges with the Equal Employment Opportunity Commission in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. He also claims Weil McLain violated his rights under the Family Medical Leave Act, 29 U.S.C. § 2601.

I. FACTS

Mr. Fly worked at Weil McLain's Michigan City, Indiana, facility from 1995 until May 16, 2003, when the company terminated his employment. Mr. Fly held a variety of positions during that time.

In early April 2003, Mr. Fly, who is African-American, filed a grievance relating to the denial of his request to requalify for a position at Weil McLain based

his allegation that similarly-situated Caucasian employees had been allowed to requalify for positions. On April 16, 2003, Mr. Fly began a leave of absence from his employment because of stress. Weil McLain received a letter, dated April 17, from Dr. Clifton Titus, Mr. Fly's psychologist, reporting that because he felt Mr. Fly "might be at risk for poor emotional and anger control in the work situation," he had advised Mr. Fly to take a three-month leave of absence, after which Dr. Titus would reevaluate Mr. Fly for return to work. Mr. Fly applied for short-term disability benefits, claiming his stress was job-related, and for leave pursuant to the Family Medical Leave Act. His leave request was conditionally approved and became effective April 24.

Synchrony, Inc., administrator of Weil McLain's workers' compensation plan, undertook an investigation of Mr. Fly's injury based on Mr. Fly's claim that his injury was work-related. Investigators observed Mr. Fly and videotaped his activities on April 26 and April 28; another investigator, Christal Caprio, initiated a telephone interview with Mr. Fly on May 7 relating to his claim. Weil McLain says that the information gathered by the investigators and reports made to Weil McLain by employees gave the company reason to believe Mr. Fly was working at another job while on leave and without having obtained written permission to do so.

Frank Ganzlmar, Weil McLain's human resources manager, contacted Mr. Fly and scheduled a meeting for the morning of May 13 to discuss the matter.

2

Although Mr. Fly had been notified of the time and date of the meeting, he didn't attend. Mr. Fly says he didn't want to go without union representation.

In the early afternoon of May 13 and on May 14, company officials observed Mr. Fly engaging in landscaping work. Weil McLain says officials then concluded that Mr. Fly's activities while on leave were in violation of two provisions of the applicable labor agreement, and they made the decision to terminate his employment. Mr. Fly was notified, by letter dated May 16, as follows:

> [Y]ou have given false information to the Company regarding your disability claim, have received a leave of absence under false pretenses, and have been engaged in full-time employment during this leave of absence without written permission from the Company. Based upon this information you are hereby informed that your employment with Weil McLain is terminated effective May 16, 2003.

On May 19, 2003, Mr. Fly filed a complaint with the Michigan City Human Rights Commission, claiming he was wrongfully terminated based on race, disability, and retaliation. The EEOC issued a right to sue letter on December 16, 2003. Mr. Fly filed his complaint in this court on March 12, 2004, seeking lost wages, compensatory and punitive damages, fees, and costs.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding

3

whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the non-moving party even when the record as a whole is viewed in the light most favorable to the non-moving party. Harper v. Vigilant Ins. Co., No. 04-1087, 2005 WL 3288341, * 3 (7th Cir. Dec. 6, 2005). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in his favor. Lawrence v. Kenosha County, 391 F.3d 837, 842 (7th Cir. 2004); *see also* Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events'" *(quoting* Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999)).

4

III.  DISCUSSION

*(A) Racial Discrimination and Harassment*

Mr. Fly alleges that he was subjected to discrimination and harassment based on his race during his employment at Weil McLain in violation of 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981. Title VII of the Civil Rights Act of 1964, as amended, makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Section 1981 provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Although Title VII and Section 1981 differ in the types of discrimination they proscribe, claims of race discrimination under the two statutes are analyzed in the same manner, Patton v. Indianapolis Public Sch. Bd., 276 F.3d 334, 338 (7th Cir. 2002), and may be proven by way of direct or indirect evidence. O'Neal v. City of New Albany, 293 F.3d 998, 1003 (7th Cir. 2002).

To prevail on summary judgment, Mr. Fly must "either put[] in enough evidence, whether direct or circumstantial, of discriminatory motivation to create a triable issue or . . . establish[] a prima facie case under the *McDonnell Douglas* formula." Rudin v. Lincoln Land Comm'y College, 420 F.3d 712, 719 (7th Cir. 2005) (*quoting* Sheehan v. Daily Racing Form, Inc., 104 F.3d 940, 940 (7th Cir. 1997)). Under the direct method of proof, Mr. Fly may present direct evidence of discrimination, "which, if believed by the trier of fact, [would] prove the particular

5

fact in question without reliance upon inference or presumption," Eiland v. Trinity Hosp., 150 F.3d 747, 751 (7th Cir. 1998), or circumstantial evidence, which would allow the trier of fact "to infer intentional discrimination by the decisionmaker." Rogers v. City of Chicago, 320 F.3d 748, 753 (7th Cir. 2003).

Using the indirect method, Mr. Fly may establish a prima facie case of race discrimination under the burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), by showing that (1) he belongs to a protected class, (2) he was performing his job satisfactorily, (3) he suffered an adverse employment action, and (4) his employer treated similarly-situated employees outside his protected class more favorably. Logan v. Kautex Textron N.A., 295 F.3d 783, 788 (7th Cir. 2001). If he does so, Weil McLain must produce a non-discriminatory reason for its action; if the company does so, Mr. Fly must then present sufficient evidence that would enable a trier of fact to find that the explanation is a pretext for discrimination. 295 F.3d at 788. "Despite this burden-shifting approach, the ultimate burden of proof to establish discrimination remains at all times with the plaintiff." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004).

Weil McLain concedes, for purposes of its summary judgment motion, that Mr. Fly can establish a prima facie case of discrimination, but argues he can't prevail on his claims because it has legitimate, non-discriminatory reasons for his termination. The company says Mr. Fly's actions violated two provisions of the applicable labor agreement between Weil McLain and the Glass, Molders, Pottery,

6

Plastics & Allied Workers, AFL-CIO, Local 316B, the union representing Mr. Fly and the other workers at the plant. Weil McLain asserts that Mr. Fly's violation of a seniority provision and a work rule in the labor agreement justified its decision to terminate his employment.

### 1. Violation of Seniority Provision

Weil McLain first says Mr. Fly violated Article III, Section H, of the labor agreement, which provides in pertinent part that

> 1. An employee's seniority may be broken and his employment terminated for any of the following reasons:
> 
> \* \* \*
> 
> f.   The employee has without written permission from the Company worked full time for another employer while on leave of absence from the Company.

Agreement, pp. 10-11.

Weil McLain explains that because Mr. Fly's leave of absence was based on his claim of work-related stress, an investigation of his injury was undertaken by Synchrony, Inc., Weil McLain's workers' compensation administrator. Early in Mr. Fly's leave, Weil McLain officials received information from other employees that Mr. Fly was working at another job while on leave; based on that information, the company, in conjunction with Synchrony, hired a private investigator to look into Mr. Fly's activities. Investigators from Insight Investigations observed Mr. Fly on April 26 and April 28 and submitted a report recounting Mr. Fly's activities, which, according to Weil McLain, indicated that Mr. Fly "was engaged in both

running and working for his own landscaping business while on leave from Weil McLain." Weil McLain also reports that on May 13 and May 14 company officials – Gregg Black, vice president of human resources, Frank Ganzlmar, human resources manager, and Wayne Barksdale, vice president of operations – observed Mr. Fly engaging in what they believed to be landscaping activities.

Weil McLain says the following findings led company officials to conclude that Mr. Fly violated Article III, Section H of the labor agreement: outside investigators and Weil McLain officials observed Mr. Fly engaging in landscaping activities during the time he was on leave of absence, and he had not obtained prior permission to do so. Company officials concluded Mr. Fly was engaging in unauthorized, full-time employment during his leave in violation of the labor agreement. Weil McLain insists its decision to terminate Mr. Fly's employment was based on those considerations and not on race.

Mr. Fly responds that a genuine issue of material fact exists relating to his violation of Article III, Section H because Weil McLain hasn't put forth any evidence that he worked full time for his own company. The burden of production, though, is on Mr. Fly: because Weil McLain has proffered a legitimate non-discriminatory reason, Mr. Fly must produce evidence "from which a rational trier of fact could infer that the company lied about its proffered reasons." Mills v. Health Care Serv. Corp., 171 F.3d. 450, 458 (7th Cir. 1999). Even if Mr. Fly produced evidence to prove he wasn't working full time, "that fact would not show pretext as long as [Weil McLain] believed" Mr. Fly was engaging in other full time

8

work. Rudin v. Lincoln Land Community College, 420 F.3d 712, 727 (7th Cir. 2005). Mr. Fly hasn't alleged or produced evidence to demonstrate that the conclusion by Weil McLain – that he was, while on a leave of absence, engaging in other full-time employment – was unreasonable or anything but company officials' honest opinions about his activities.

Mr. Fly also argues that although Weil McLain "attempts to claim that [he] did not have permission to work full time when on leave of absence, . . . [Weil McLain] knew, since May 10, 2002, that [he] had a landscaping business, as Patti Colman of Weil McLain human resources attended a deposition where [he] discussed his business endeavors." Resp., at 8. Mr. Fly, though, hasn't suggested or produced evidence to show that prior knowledge by Weil McLain of his landscaping business amounted to "written permission" from Weil McLain to work "full time for another employer while on leave of absence" as required by Article III, Section H.

Mr. Fly insists he never worked full-time for his landscaping business, but he hasn't argued or produced any evidence to establish that company officials' interpretation of his conduct was dishonest or racially motivated. To prove pretext, Mr. Fly "must produce 'significantly probative admissible evidence' from which the trier of fact could infer that the employer's reason was false and that the actual reason was discriminatory." Jones v. Union Pacific R.R., 302 F.3d 735, 742-743 (7th Cir. 2002). He hasn't done so.

9

### 2.  Violation of Work Rule 35

Weil McLain also says Mr. Fly violated Work Rule 35, contained in Part Two of the labor agreement entitled "Plant Conduct Rules and Regulations." Rule 35 is included in Category # 4 of those rules:

> *Category # 4* – Violation of these rules will result in immediate suspension and probable discharge
>
> \* \* \*
>
> 35.  Falsifying or refusing to give testimony when accidents are being investigated; or falsifying or assisting in falsification of personnel records, or any other records; or giving false information in making application for employment.

Agreement, p. 57.

Weil McLain contends Mr. Fly made false statements in connection with the company's investigation of his leave of absence. The company points to information Mr. Fly gave to Christal Caprio, an investigator from Synchrony. Ms. Caprio testified that when she contacted Mr. Fly to discuss his claim, he refused to consent to having the telephone call taped, so she "went ahead and took his statement with regards to what happened." Ms. Caprio says she took notes of the conversation and thereafter immediately typed them up. Her typed report reads in pertinent as follows:

> Last day worked: 4-17-03 [Mr. Fly] says his doctor gave him 3 months off and he was supposed to take it easy. If at the end of 3 months he was not better the doctor will give him another 3 months . . . . He reports his biggest symptom is not being able to sleep well. He is able to complete his normal daily living, he reports he is doing nothing outside of his job at [Weil McLain] at this time. He stays home, he sees a doctor once a week for about one hour.

10

Ms. Caprio was questioned about the process:

> Q   Now, as far as you can tell us today, Chris, was that a verbatim kind of recollection from your notes you took in the conversation of Mr. Fly that day?
> A   It was very close. It wasn't word for word, but very close.
>
> \*   \*   \*
>
> Q   Okay. When you was taking down [Mr. Fly's] statements on the phone, was you handwriting 'em or was you putting them in on the computer?
> A   I was handwriting.
> Q   You was handwriting. So, what you done, you took a handwritten note and put 'em here, then.
> A   Correct.
> Q   So, these are not your actual handwritten notes, then, are they?
> A   No. No.
> Q   Okay. Is it possible that you could have written something down that wasn't exactly said since you didn't have a recorder to go back and check to make sure?
> A   It's more probable that I left things out than I put things in incorrectly.

Arbitration Tr., at 66, 71-72.

Based on Ms. Caprio's report that Mr. Fly told her he would be "taking it easy" and "doing nothing," when he was working at his landscaping business, Weil McLain says company officials concluded Mr. Fly had given a false statement in violation of Work Rule 35. Weil McLain maintains its termination of Mr. Fly's employment based on his violation of Work Rule 35 was justified and amounts to a legitimate, non-discriminatory reason for the company's action in this regard.

Mr. Fly denies telling Ms. Caprio he was "staying home" and argues that his statement that he was "doing nothing" is open to interpretation. Mr. Fly contends "what is meant by 'doing nothing' . . . should be put to a jury. Was [Mr.] Fly's minimal activity really 'doing nothing' as [he] thought of it, or was his inspection

11

of job sites of such consequence that he lied to a claims investigator when making the off hand comment that he was 'doing nothing'?" Resp., at 11.

Mr. Fly's interpretation of what he meant by "doing nothing" isn't the issue, though; even if he could prove he considered his landscaping work to be "doing nothing," at most he could prove Weil McLain misinterpreted his statement. "[T]he pretext inquiry focuses on whether the employer's stated reason was honest, not whether it was accurate." Rudin v. Lincoln Land Community College, 420 F.3d at 727. If Weil McLain "believed [Mr. Fly] engaged in improper behavior . . ., it could conclude that [he] violated company policy." Jones v. Union Pacific R.R. Co., 302 F.3d at 743. Mr. Fly hasn't argued or produced any evidence to show Weil McLain didn't honestly believe he violated Work Rule 35 by informing Ms. Caprio he was "doing nothing" when, in reality, he was working for his landscaping business.

### 3.  Conclusion

"Pretext requires more than showing that the decision was 'mistaken, ill considered or foolish, [and] so long as [the employer] honestly believed those reasons, pretext has not been shown.'" Farrell v. Butler Univ., 421 F.3d 609, 613 (7th Cir. 2005) (*quoting* Jordan v. Summers, 205 F.3d 337, 343 (7th Cir. 2000)). Weil McLain says the terms of the labor agreement and the Work Rules were applicable to all its employees, and Mr. Fly "has provided no evidence to contradict this interpretation or to give examples demonstrating that the policy had never

12

before been interpreted in that manner." Jones v. Union Pacific R.R. Co., 302 F.3d at 743. Weil McLain says Mr. Fly's employment was terminated when company officials concluded that while he was on leave of absence he engaged in other full time employment without having obtained written permission to do so and he gave false statements in that regard. Mr. Fly hasn't come forward with any evidence to show that Weil McLain's reasons for terminating his employment were dishonest, Rudin v. Lincoln Land Community College, 420 F.3d at 727 ("pretext inquiry focuses on whether the employer's stated reason was honest, not whether it was accurate"), "used to cover [its] tracks," Grube v. Lau Indus., Inc., 257 F.3d 723, 730 (7th Cir. 2001), or "offered to cover [its] discriminatory motives." Hudson v. Chicago Transit Authority, 375 F.3d 522, 562 (7th Cir. 2004). Mr. Fly hasn't carried his burden of demonstrating pretext, and Weil McLain is entitled to summary judgment on his claim of racial discrimination and harassment.

### (B) Retaliation

Mr. Fly alleges in his complaint that he suffered retaliation because he filed charges with the Equal Employment Opportunity Commission. Weil McLain has moved for summary judgment on his claim. To prevail, Mr. Fly must, under the direct method, present either direct or circumstantial evidence of retaliation, Stone v. City of Indianapolis Pub. Utilities Div., 281 F.3d 640, 644 (7th Cir. 2002), or establish a prima facie case of retaliation under the indirect method by demonstrating that after he filed a charge with the EEOC, he was subjected to an

13

adverse employment action even though he was performing his job satisfactorily, and no similarly situated employee who didn't file a charge was treated more favorably. Mannie v. Potter, 394 F.3d 977, 984 (7th Cir. 2005). If Mr. Fly establishes a prima facie case of retaliation, the burden shifts to Weil McLain to present evidence of a legitimate, non-discriminatory reason for the employment action, and if it does so, Mr. Fly must demonstrate that the company's reason was contrived and not the real reason for his termination and that his participation in the protected activity was, in fact, the real reason for his termination. Little v. Illinois Dept. of Revenue, 369 F.3d 1007, 1012 (7th Cir. 2004) ("Pretext exists where the ostensible reason for the employment decision is really a lie contrived to mask unlawful discrimination.").

Weil McLain argues Mr. Fly can't establish a prima facie case of retaliation and, in the alternative, sets forth legitimate, non-discriminatory reasons for the employment action: that Mr. Fly's employment was terminated because he violated provisions of the applicable labor agreement. Mr. Fly hasn't responded to Weil McLain's argument on this issue; he hasn't produced any evidence relating to his claim of retaliation or challenged the company's argument that he was fired not in retaliation for his filing an EEOC charge but because he violated terms of the labor agreement. Accordingly, Weil McLain is entitled to summary judgment on Mr. Fly's retaliation claim.

*(C) Family and Medical Leave Act*

The Family and Medical Leave Act allows an employee to take leave from his or her job for up to twelve weeks for various health and family related reasons, 29 U.S.C. § 2612(a), and guarantees, upon the employee's return, reinstatement to his or her original or an equivalent position. 29 U.S.C. § 2614(a)(1). Employers are prohibited from discriminating or retaliating against employees who exercise their rights under the statute. 29 U.S.C. § 2615(a)(2). "[W]here an employee is terminated while taking FMLA leave, the trial court must determine whether the termination was illegally motivated by the employee's choice to take leave, or whether the termination was motivated by other, valid reasons." Phelan v. City of Chicago, 347 F.3d 679, 683 (7th Cir. 2003).

The parties agree that Mr. Fly's employment was terminated while he was on FMLA leave, but they don't agree about the reason for the termination. Weil McLain says Mr. Fly was terminated not because he took FMLA leave, but because he violated various terms of the applicable labor agreement. Weil McLain asserts that Mr. Fly's FMLA leave "did not relieve him of the obligations under the Agreement, and does not excuse his failure to obtain permission to work while on leave, or his failure to be truthful during his application for disability benefits." Weil McLain says the company is entitled to summary judgment because its termination of Mr. Fly for violating the labor agreement isn't a violation of FMLA.

Mr. Fly argues in response that summary judgment should be denied because the reasons set forth by Weil McLain "have no merit or are in dispute." To defeat summary judgment, Mr. Fly has the burden of coming forth with

15

evidence that would allow a finding that the company's proffered reasons are pretextual. Mannie v. Potter, 394 F.3d at 984. While Mr. Fly disagrees with Weil McLain's conclusions about his activities while on leave, "[t]he focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered." Stewart v. Henderson, 207 F.3d 374, 378 (7th Cir. 2000). As already discussed, Mr. Fly hasn't come forward with any evidence to show that the reasons set forth by Weil McLain weren't honest conclusions about his activities, nor has he presented any additional evidence to establish that those reasons were a pretext for discrimination in violation of FMLA. The company is entitled to summary judgment on Mr. Fly's claim.

## IV. CONCLUSION

The court GRANTS the motion of defendant SPX Weil McLain for summary judgment [docket # 21] as to all claims contained in Ryan Fly's complaint.

SO ORDERED.

ENTERED:     January 31, 2006

/s/ Robert L. Miller, Jr.
Chief Judge
United States District Court

16